UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

John Tokarski,

                              Plaintiff,

        v.

Commissioner of Social Security,

                             Defendant.

**Decision and Order**

18-CV-459 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 8.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the issue that draws the Court's immediate attention concerns attempts to obtain records from Niagara Falls Behavioral Health Center. Plaintiff appears to have received treatment from Niagara Falls Behavioral Health Center for at least two years beginning in 2014. Plaintiff did not disclose this treatment source in his initial application because, by a few months, the application seems to have predated the start of treatment. Nonetheless, counsel advised the ALJ at the hearing on January 4, 2017 that plaintiff had been trying to obtain the records and had been unsuccessful. [33–34.] Plaintiff now argues that the ALJ—appearing remotely by video from Virginia—made no effort of his own to obtain the records from Niagara Falls Behavioral Health Center. The ALJ only held the record open for an additional 14 days. "As such, there was a glaringly obvious gap in the record and the ALJ improperly relied upon the absence of relevant evidence, an error warranting remand for further administrative proceedings." (Dkt. No. 7-1 at 13.) The Commissioner responds that "the ALJ satisfied his duty to help plaintiff obtain her records by leaving the record open for two weeks to allow plaintiff's counsel more time to submit additional evidence." (Dkt. No. 8-1 at 21.) According to the Commissioner, plaintiff "certainly did not ask the ALJ to intervene by making his own request for the records. Nor did plaintiff ask the ALJ to issue a subpoena." (*Id.* at 22.) The Commissioner concludes that the record is sufficient because other treatment providers weighed in on plaintiff's mental health and because two consultative examinations and one consultative review occurred in connection with plaintiff's mental health, all in 2011 or 2014.

Plaintiff has the better argument. "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act and bears the burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations. However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally

4

has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation and editorial marks and citations omitted). The ALJ has no obligation to go further when there are no obvious gaps in the administrative record. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted). The duty to develop the record does continue, however, "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Discharging the duty to develop the record means making every reasonable effort to obtain records from medical sources. "Every reasonable effort means that we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 416.912(b)(1)(i); *see also id.* § 1512(b)(1)(i) (same). The scenario here presents a close call. Plaintiff alerted the ALJ about records that purportedly covered over two years of treatment. The ALJ left the record open and eventually obtained consultative examinations and review. The consultative examinations and review might have been an acceptable substitute had the ALJ exhausted "every reasonable effort" to obtain the records. *See* 20 C.F.R. § 416.912(b)(2) ("Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources."); *id.* § 416.1512(b)(2) (same). A shorter treatment history might have pushed the Court to see less of a gap in the record. In this instance, though, the ALJ appears not to have made any initial request of his own for the medical records. *Cf. Simpson v. Colvin*, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *13 (W.D.N.Y. Aug. 25, 2016) ("It was clear from the record in this matter that Plaintiff had been treated by LMSW Lechner between May 2012 and August 2013, yet the ALJ does not appear to have even inquired into the missing treatment records."). Considering the duration of treatment, an additional effort by

5

the ALJ to obtain the records in question would be helpful.  *Cf. Roscoe v. Berryhill*, No. 17-CV-6502P, 2018 WL 4519880, at *8 (W.D.N.Y. Sept. 21, 2018) ("Not only could the additional mental health treatment records have affected the ALJ's RFC determination, but they also might have altered his credibility assessment, as well as his assessment of the proper weight to be afforded to the medical opinion authored by Harding.").  The Court takes no position at this time as to whether the records, once obtained, would change any of the ALJ's analysis.  If the records cannot be obtained through the ALJ's reasonable efforts then the Court will leave for another time whether the consultative examinations and review conducted so far make for an acceptable substitute.

Plaintiff has raised other issues that the Court will not address at this time.  Upon remand, the Commissioner is free to revisit those issues as might be appropriate.

### III.  CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 8).  The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 31, 2019